UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

*FILED*

*00 AUG -8 PM 3:09*

*U.S. DISTRICT COURT*
*N.D. OF ALABAMA*

JANA WARMOUTH,                    )
                                  )
        Plaintiff,                )
                                  )
vs.                               )    Civil Action No. CV-98-S-2513-NE
                                  )
BOEING CORPORATION,               )    **ENTERED**
                                  )
        Defendant.                )    AUG  8 2000

## MEMORANDUM OPINION

This action is before the court on defendant's motion for summary judgment (Doc. No. 44).[1] Upon consideration of the motion, briefs, evidentiary submissions, and pleadings, this court concludes it is due to be granted.

### I. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides, in relevant part, that summary judgment not only is proper, but "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Thus, "the plain language of Rule 56(c) mandates

---

[1] Also pending before the court are two other motions filed by defendant: a motion to dismiss the complaint or, in the alternative, to preclude plaintiff from using wrongfully obtained evidence and to limit damages, and motion for costs (Doc. No. 43), and a motion for leave to file a reply brief (Doc. No. 63). Upon consideration of the first motion and plaintiff's response, and based on the findings made herein, this court concludes it is due to be denied. Defendant's motion for leave to file a reply brief is due to be granted.

the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

The moving party bears the initial burden of showing the court, by reference to materials on file, that no genuine issues of material fact exist to be decided at trial. *See generally id.*; *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). The movant discharges this burden by "showing" or "pointing out" to the court there is an absence of evidence to support the non-movant's case. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (*per curiam*). Rule 56 permits the movant to discharge this burden with or without supporting affidavits. *See Celotex Corporation*, 477 U.S. at 324, 106 S.Ct. at 2553.

When the moving party has discharged its burden, the non-movant must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial. *See Jeffery*, 64 F.3d at 593. The nonmoving party must put forth more than a "mere 'scintilla'" of evidence; instead, "there must be enough of a

2

showing that the jury could reasonably find for that party."
*Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

In deciding whether the movant has met its burden, the court is obligated to draw all inferences from the evidence presented in the light most favorable to the non-movant and, also, to resolve all reasonable doubts in that party's favor. *See generally Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Inferences in favor of the non-movant are not unqualified, however. "Mere general allegations which do not reveal detailed and precise facts will not prevent the award of summary judgment." *Resolution Trust Corporation v. Dunmar Corporation*, 43 F.3d 587, 592 (11th Cir. 1995) (citation omitted). Moreover, evidence that is merely colorable, *see Brown v. City of Clewiston*, 848 F.2d 1534, 1537 (11th Cir. 1988), conclusory, *see Peppers v. Coates*, 887 F.2d 1493, 1498 (11th Cir. 1989), or conjectural, does not create a genuine issue of material fact.

Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment. *See Augusta Iron & Steel Works v. Employers Insurance of Wausau*, 835 F.2d 855, 856 (11th

3

Cir. 1988). A "genuine" dispute about a material fact exists if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Jeffery*, 64 F.3d at 594 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). The bottom line is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52, 106 S.Ct. at 2512.

## II. INTRODUCTION

Before discussing the factual background of this case, the court first must determine the exact legal claims in dispute. While resolution of that question usually is straightforward, it is not so here. Plaintiff's unwieldy pleadings and limited response to defendant's motion for summary judgment contribute to the confusion. *See Ebrahimi v. City of Huntsville Board of Education*, 114 F.3d 162, 165 (11th Cir. 1997) (observing that "shotgun notice pleadings ... impede the orderly, efficient, and economic disposition of disputes").

### A.  EEOC Charge

Plaintiff, Jana Warmouth, filed a charge of discrimination

against defendant, Boeing Corporation, with the Equal Employment Opportunity Commission on August 27, 1997.[2]   In an introductory section, plaintiff contended defendant had violated a myriad of federal employment discrimination statutes, including the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* ("ADEA"), Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.* ("FMLA"), and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA"):

> I believe that I have been subjected to discriminatory treatment in violation of the Civil Rights Act, as amended, based on my age, my sex, and my marital status by my employer and my employer's agents.    I further charge that I have been discriminated against in violation of the FMLA.  I further charge that I have been discriminated against in violation of the ADA.  I further charge that I have been and presently am being retaliated against by my employer and by my employer's agents as a result of complaints which I have made to various supervisory personnel regarding the discriminatory treatment against me. [3]

Plaintiff then elaborated on the bases for her claims.

With respect to her age discrimination claim, plaintiff stated that while she was laid-off by defendant, younger persons with less

---

[2] *See* Exhibit 6 to plaintiff's deposition, attached as defendant's first evidentiary submission in support of summary judgment (Doc. No. 48).

[3] *Id.* at ¶ 2.

experience retained their positions.  Plaintiff added that younger

persons received significantly higher wages, despite having less

experience.[4]

As to her gender discrimination claim, plaintiff contended

that male workers received significantly higher wages than women.

She also claimed discrimination on the basis of marital status

(divorced), because she had been denied a requested transfer, and

the position she coveted eventually was filled by a married woman.[5]

Plaintiff contended defendant violated the FMLA by harassing

and retaliating against her for taking leave from work (beginning

in 1993) to care for her critically ill parents.  Such harassment

took the form of verbal abuse and the "cold shoulder" treatment

from her supervisor, and a transfer to a position that had "zero

growth potential."  Plaintiff stated that she ultimately was

transferred to another position that placed her under the same

supervisor, who immediately began harassing her anew.[6]

With respect to her disability discrimination claim, plaintiff

asserted that defendant "refused to properly document [her

endocrinologic] illness in [her] personnel records and have [*sic*]

---

[4] *See id.* at ¶ 3 (first paragraph).

[5] *See id.* (second and third paragraphs).

[6] *See id.* (fourth paragraph).

refused to otherwise accommodate [her] illness."[7]

Plaintiff concluded the narrative summary of her EEOC charge by noting that she had "been denied pay raises, promotions, transfers, and have benefits and employment opportunities that [she] was otherwise qualified or entitled to receive."[8]

**B.   Complaint**

The EEOC dismissed plaintiff's charge of discrimination, and issued a notice of right-to-sue on July 7, 1998.[9]   Plaintiff commenced this action on October 5, 1998, asserting the following claims:

> 1.   disparate treatment based on plaintiff's gender, with respect to defendant's alleged failure to promote, denial of pay increases, and decision to terminate;
>
> 2.   disparate treatment based on plaintiff's age, with respect to defendant's alleged failure to promote, denial of pay increases, and decision to terminate;
>
> 3.   unlawful harassment based on plaintiff's gender;
>
> 4.   unlawful harassment based on plaintiff's age;
>
> 5.   discrimination and harassment based on plaintiff's taking leave under the FMLA, with the harassment beginning in 1993 and continuing until the date of her termination;
>
> 6.   discrimination and harassment based on plaintiff's

---

[7] *See id.* (fifth paragraph).

[8] *See id.* at ¶ 4.

[9] *See* Exhibit 15 to plaintiff's deposition.

7

disability;

7.    defendant's engagement in a "pattern or practice" of
discrimination    against    female    employees,    disabled
employees, and employees over the age of 40; and

8.    disparate    impact    discrimination    as    to    female
employees, disabled employees, and employees over the age
of 40, based on defendant's employment of certain
facially neutral employment practices. [10]

Defendant moved for summary judgment on all of the above claims.

In support of that motion, it argued that a number of the claims

were beyond the scope of plaintiff's EEOC charge.[11]

In response to defendant's motion, plaintiff argued that

summary judgment was inappropriate as to her ADA claim for unlawful

termination and her FMLA claim for retaliation.[12]    While not

expressly conceding that her other claims were due to be dismissed

for the reasons advanced by defendant in its motion for summary

judgment, plaintiff did not argue in support of retention of those

claims either.

Based on plaintiff's response to (or failure to rebut various

contentions made in) defendant's motion for summary judgment,

defendant argued that the claims not contested by plaintiff should

---

[10] *See* Complaint (Doc. No. 1) ¶¶ 6, 8, 9, 10, & 11.

[11] *See* Brief in support of defendant's motion for summary judgment (Doc.
No. 50), at 16-20.

[12] *See* Plaintiff's brief in opposition to defendant's motion for summary
judgment (Doc. No. 61), at 3-12.

be dismissed.  Furthermore, defendant asserted that plaintiff's ADA unlawful termination claim and FMLA retaliation claim were either beyond the scope of her EEOC charge, or not expressly pled in her complaint and, therefore, should be summarily dismissed.[13]   The court addresses those arguments below.

## C.   Discussion

### 1.   Claims not addressed by plaintiff in opposition to summary judgment

The court agrees with defendant that, based on plaintiff's filings in opposition to summary judgment, she implicitly has conceded that dismissal of the following claims is warranted: gender-based disparate treatment regarding defendant's alleged failure to promote, denial of pay increases, and decision to terminate; age-based disparate treatment regarding defendant's alleged failure to promote, denial of pay increases, and decision to terminate; gender-based harassment; age-based harassment; "pattern or practice" discrimination based on gender, age, or disability; and disparate impact theories of gender, age, or disability discrimination.   As to plaintiff's claim of "discrimination and harassment based on disability," the court notes that plaintiff has failed to pursue the theories of

---

[13] Reply to plaintiff's opposition to motion for summary judgment, attached as an exhibit to defendant's motion for leave to file a reply brief, at 1-3.

discrimination she set forth in her EEOC charge —— that defendant violated the ADA by refusing to document her alleged disability and otherwise failing to accommodate her.   Dismissal of those particular ADA claims also is appropriate at this point.[14]

Federal Rule of Civil Procedure 56(c) "saddles the non-movant with the duty to 'designate' the specific facts in the record" supporting her claims.  *Jones v. Sheehan, Young & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996).  In this case, the only specific facts designated by the plaintiff in opposition to summary judgment pertain to her ADA wrongful termination claim and her FMLA retaliation claim.  The following statements made by the Eleventh Circuit in *Resolution Trust Corporation v. Dunmar Corporation*, 43 F.3d 587 (11th Cir. 1995), are of immediate relevance:

> However, this case was not dismissed on the pleadings, but was dismissed upon the district court's grant of RTC's motion for summary judgment.  In opposing a motion for summary judgment, "a party may not rely on his pleadings to avoid judgment against him."  *Ryan v. Int'l Union of Operating Eng'rs, Local 675*, 794 F.2d 641, 643 (11th Cir. 1986).  There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment.  *Blue Cross & Blue Shield v. Weitz*, 913 F.2d 1544, 1550 (11th Cir. 1990).  <u>Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.</u>

---

[14] The court addresses plaintiff's wrongful termination claim under the ADA *infra*, in § II.C.2.

*Id.* at 599 (emphasis supplied). *See Jones*, 82 F.3d at 1338 (noting that Rule 56(c) "does not impose upon the district court a duty to survey the entire record in search of evidence to support a non-movant's opposition").

Accordingly, all claims but those addressed by plaintiff in opposition to summary judgment are due to be dismissed.

## 2.   Claims addressed by plaintiff in opposition to summary judgment

A plaintiff's attempt to assert claims in a judicial complaint that were not properly addressed to the EEOC in the charge of discrimination should be resisted by a trial court, because a plaintiff must exhaust administrative remedies before filing suit. *See generally Zipes v. Trans World Airlines*, 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982); *Williams v. Little Rock Municipal Water Works*, 21 F.3d 218, 222 (8th Cir. 1994); *Kirby v. Dole*, 736 F.2d 661, 663-64 (11th Cir. 1984).

It is well-established that a plaintiff's assertion of employment discrimination claims in a judicial complaint "is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Mulhall v. Advance Security, Inc.*, 19 F.3d 586, 589 n.8 (11th Cir. 1994). *See also Coon v. Georgia Pacific Corporation*, 829 F.2d 1563, 1569

11

(11th Cir. 1987) (noting that scope of judicial complaint is limited to acts of discrimination mentioned in EEOC charge, along with claims "like or related" to the claims raised in the charge); *Griffin v. Carlin*, 755 F.2d 1516, 1522 (11th Cir. 1985) (noting that claims are properly before a court if they either: were expressly raised in the pleadings before the administrative agency; might reasonably be expected to be considered in a diligent investigation of those expressly raised issues; or were in fact considered during the investigation). Moreover, "the liberal construction accorded a pleading ... does not require courts to fabricate a claim that a plaintiff has not spelled out in [her] pleadings." *Maniccia v. Brown*, 171 F.3d 1364, 1367 n.1 (11th Cir. 1999) (citing *Case v. State Farm Mutual Automobile Insurance Company*, 294 F.2d 676, 678 (5th Cir. 1961)).

Plaintiff's claim for retaliation under the FMLA can be gleaned from her complaint, and is like or related to the allegation made by her in the EEOC charge. In fact, the FMLA's main purpose, from a liability perspective, is to prevent employers from "interfer[ing] with, restrain[ing], or deny[ing]" the exercise of guaranteed family and medical leave rights. *See* 29 U.S.C. §§ 2615(a), 2617(a). *See generally* I Barbara Lindemann & Paul

12

Grossman, *Employment Discrimination Law* 450-51 (3d Cir. 1996).
Accordingly, plaintiff has exhausted her administrative remedies
with respect to that claim, and it must be examined on the merits,
subject to the qualification discussed below.

A FMLA retaliation claim must "be brought ... not later than
2 years after the date of the last event constituting the alleged
violation for which the action is brought." 29 U.S.C. §
2617(c)(1). However, sub-section (c)(2) extends the limitations
period to three years for willful violations of the FMLA. *See* 29
U.S.C. § 2617(c)(2).

Plaintiff filed her complaint on October 5, 1998. That
complaint charged that defendant "has acted willfully and
maliciously with respect to its treatment" of plaintiff.[15] The
court therefore will only examine *infra* allegedly retaliatory
actions taken by defendant on or after October 5, 1995. *See Settle
v. S.W. Rodgers Company, Inc.*, 998 F. Supp. 657, 664 (E.D. Va.
1998) ("Thus, where, as here, a plaintiff sufficiently alleges
facts supporting the claimed violation of the FMLA, a general
averment as to willfulness should be sufficient to trigger the
three-year limitations period."), *aff'd*, 182 F.3d 909 (4th Cir.

---

[15] *Id.* ¶ 15.

1999).[16]

Plaintiff's ADA unlawful termination claim requires closer scrutiny, however.    In her EEOC charge, plaintiff alleged discriminatory treatment in light of the fact that defendant failed to document her alleged disability, and further refused to accommodate her based on the disability.[17]    In her complaint, plaintiff asserted defendant violated the ADA by harassing and discriminating against her based on her disability, and refusing to accommodate her upon request.[18]    While the complaint is more generally phrased than the EEOC charge with respect to plaintiff's ADA claims, it is important to note that she explicitly alleged in her complaint "that she was _terminated_ [by defendant] on account of her _sex_ and _age_."[19]    In her brief in opposition to summary judgment,

---

[16] A "continuing violation" theory of retaliation is not applicable in this context to "revive" any action taken by defendant prior to October 5, 1995, in response to plaintiff's FMLA usage. "Where the employer engaged in a discrete act of discrimination outside the limitations period, allegations that the discriminatory act continues to adversely affect the employee or that the employer presently refuses to rectify its past violation will not satisfy the statute of limitations." Knight v. Columbus, Georgia, 19 F.3d 579, 580 (11th Cir. 1994). _See also_ Beavers v. American Cast Iron Pipe Company, 975 F.2d 792, 796 (11th Cir. 1992); Gonzalez v. Firestone Tire & Rubber Company, 610 F.2d 241, 249 (5th Cir. 1980).

[17] _See_ Exhibit 6 to plaintiff's deposition at ¶ 3 (fifth paragraph).

[18] _See_ Complaint ¶ 9.  Plaintiff also asserted ADA "pattern or practice" and disparate impact claims in her complaint. _See id._ ¶¶ 10-11.  Those claims have been dismissed, however. _See supra_ § II.C.1.

[19] Complaint  ¶  6  (emphasis supplied).  With respect to her age discrimination claims, plaintiff expressly alleged unlawful termination in her EEOC charge.

however, plaintiff argues that defendant failed to "accommodate" plaintiff's disability by terminating her.[20]  Even assuming a claim for wrongful termination under the ADA can be gleaned from plaintiff's complaint, it will not be considered by the court for the reasons set forth below.

The dispositive issue concerns whether an ADA claim for wrongful termination can reasonably be expected to grow out of an EEOC charge of ADA discrimination that focused on defendant's failure to document plaintiff's condition and reasonably accommodate her.[21]  Claims for "failure to document a disability" and "failure to accommodate" under the ADA are completely different from a wrongful termination claim under the ADA.  In *Green v. National Steel Corporation, Midwest Division*, 197 F.3d 894 (7th Cir. 1999), the plaintiff filed an EEOC charge asserting "that she was terminated because of her disability." *Id.* at 897.  After the EEOC issued a notice of right-to-sue, the plaintiff filed a

---

[20] *See* Plaintiff's brief in opposition to defendant's motion for summary judgment, at 10:

> Plaintiff's contention is quite simple:  defendant's own Affirmative Action policy -- as a government contractor -- required it to favorably consider disabilities in its decisions concerning layoff and recall.  Plaintiff contends that a genuine issue of material fact exists regarding whether defendant satisfied its accommodation obligation.

[21] There is no evidence before the court that the EEOC actually investigated an allegation by plaintiff that she was discharged on account of her disability.

complaint alleging wrongful termination under the ADA, as well as failure by defendant to accommodate her disability. *See id.* In affirming the trial court's grant of summary judgment to the defendant, the Seventh Circuit emphasized that "[a] claim for failure to accommodate is separate and distinct under the ADA from one of disparate treatment because of a disability." *See id.* (citing *Weigel v. Target Stores*, 122 F.3d 461, 464 (7th Cir. 1997)).

> In fact, the two types of claims are analyzed differently under the law. ... Therefore, they are not like or reasonably related to one another, and one cannot expect a failure to accommodate claim to develop from an investigation into a claim that an employee was terminated because of a disability. *See, e.g., Marshall v. Federal Express Corp.*, 130 F.3d 1095, 1098 (D.C. Cir. 1997) (failure to accommodate claim barred where plaintiff filed an EEOC charge alleging failure to promote based on a disability but made no mention of a failure to accommodate).

> For whatever reason, Green neglected to make a "failure to accommodate" argument in her EEOC charge, and we fail to understand how she could expect that her claim that she suffered from inadequate working conditions would develop from the investigation of the reasons for her discharge. Even assuming that National did fail to accommodate Green's alleged disability, that has nothing to do with her complaint that she was wrongfully terminated. We hold that the trial judge's grant of summary judgment in favor of National on Green's failure to accommodate claim was proper.

*Id.* at 898 (other citations omitted), 900 (concluding that the

plaintiff's "failure to accommodate claim is barred because she omitted any mention of it from her EEOC complaint").

This court finds merit in the Seventh Circuit's analysis, and sees no reason why the converse of its holding — that a claim of unlawful termination under the ADA is "not like or reasonably related" to a "failure to accommodate" claim — should not apply to the facts of this case. *See also Ballard v. State of Alabama*, Civ. A. No. 94-0428-RV-C, 1996 WL 316761, at *10 (S.D. Ala. Jan. 25, 1996) (limiting plaintiff's ADA claims to those stated in the EEOC charge [*i.e.*, defendant's alleged refusal to accommodate plaintiff by providing a back-supporting chair], and dismissing all ADA claims premised on disparate treatment). Moreover, it cannot be said that a "failure to document a disability" claim is reasonably related to an unlawful termination claim. Accordingly, summary judgment on plaintiff's ADA unlawful termination claim is therefore due to be granted.

Based on the above rulings, the court must now determine whether plaintiff's FMLA retaliation claim survives defendant's motion for summary judgment. In laying out the factual background forming the basis of that claim, the court views all material, disputed facts in the light most favorable to plaintiff.

### III. FACTUAL BACKGROUND

As of October 5, 1995,[22] plaintiff was employed by defendant as a Personnel Specialist at its Military Airplane facility in Huntsville, Alabama. Her supervisor from that date until sometime in 1997 was Michael Pitzen. During the time plaintiff was supervised by Pitzen, she did not seek leave pursuant to the FMLA. After Pitzen was transferred by defendant to Houston, Texas, Jean Parker assumed supervisory duties over plaintiff. Plaintiff had been supervised by Parker in the past (from approximately 1992 through the middle of 1995), and did not wish to work under her again. Accordingly, plaintiff asked Marvin Thomas, defendant's Support Services Manager, to transfer or reassign her to a different position, away from Parker.[23] Thomas refused. In deposition, Thomas did not recall whether plaintiff, in asking for the transfer or reassignment, informed him of her belief that Parker had harassed her for taking FMLA leave in 1993 and 1994.

> Q. Do you recall Ms. Warmouth mentioning any problems with her, Jana Warmouth, having personal family medical problems and Ms. Parker not being as accommodating or cooperative as she could for Family Medical Leave Act leave?
>
> A. I do recall Ms. Warmouth telling me about, yes, a lot of personal issues that led to her absences that

---

[22] *See supra* § II.C.2.

[23] Thomas was Parker's immediate supervisor.

18

were brought to her attention by Ms. Parker.   I do not
recall any discussion from Ms. Warmouth that -- where
FMLA was an issue.   I recall it simply in that it was
absences that Ms. Parker was trying to discipline Ms.
Warmouth for.

     Q.   All right.   So in other words, you recall the
mention of the absences that were due to some personal
issues; you just don't recall FMLA being talked about
specifically?

     A.   I don't recall FMLA being talked about
specifically, no.

     Q.   Did you ever talk to Ms. Parker to get her side
of these issues?

     A.   I did.

. . .

     A.   ... Generally Ms. Parker said, again, like I
had mentioned to you earlier, that Jana had developed
some attendance concerns and she brought them to Jana's
attention.   Once she brought them to Jana's attention,
Jana then felt that she was being picked upon.
     So upon my conversation with Jean Parker, I walked
away with the feeling that there was nothing done
inappropriately that would cause me concern at this point
for having Jana report to Jean.[24]

Once under the supervision of Parker, plaintiff asked for FMLA

leave on two separate occasions.   In May and June of 1997,

plaintiff requested leave to care for her daughter, who was thirty-

two years of age at the time.[25]   (*Nota bene* that the FMLA generally

---

[24] Deposition of Marvin Thomas, attached as Exhibit 2 to plaintiff's
evidentiary submission in opposition to summary judgment (Doc. No. 59), at 23-24.

[25] *See* Plaintiff's deposition at 9.

limits child-related leave to a "son or daughter" who is "under 18 years of age."   29 U.S.C. § 2611(12)(A).   *See also* 29 U.S.C. § 2612(a)(1)(C).)   In October of 1997, plaintiff requested leave to care for her husband.   Both leave requests were approved by Parker and Tom Peters, who worked in defendant's Huntsville Human Resources department.[26]

Defendant terminated plaintiff's employment as part of a reduction-in-force on October 17, 1997.   According to Roger Deepen, defendant's Central Operations Personnel Manager at the time, the reduction-in-force had been ordered approximately seven months earlier, during March of 1997:

> In approximately March 1997, Boeing's program headquarters in Houston, Texas, notified management in Huntsville that the Huntsville human resources department was to be reduced in size by fifty percent (50%) by the end of 1997.   Tom Peters (d.o.b. 7/29/49), then Acting Site Manager for Human Resources, and Marvin Thomas (d.o.b. 7/9/45), Support Services Manager, developed a plan for reorganizing and downsizing the department, including determining what human resources functions would no longer be performed locally and what jobs or functions would be combined.   At that time, Ms. Warmouth worked in the employment center of the human resources department, which was responsible for receiving and processing job applications, publicizing job vacancies, and other functions related to hiring employees.   Under the planned reorganization, the employment center, and therefore Ms. Warmouth's job, was scheduled to be

---

[26] *See* last three pages of Exhibit 4 to affidavit of Roger Deepen, attached as defendant's second evidentiary submission in support of summary judgment.

eliminated. [27]

## IV. DISCUSSION

Plaintiff contends defendant's decision not to transfer or reassign her to a position away from Parker was made in retaliation for her exercise of rights under the FMLA. She also claims she was terminated in retaliation for exercising her FMLA rights. The court first discusses the general aspects of a FMLA retaliation claim, and then analyzes each of plaintiff's contentions separately.

Retaliation claims pursued through an offer of circumstantial evidence are subject to the burden-shifting framework initially discussed by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). As set forth in a recent opinion by the Eleventh Circuit:

> Once plaintiff establishes a prima facie case [of retaliation] by proving only that the protected activity and the negative employment action are not completely unrelated, the burden shifts to the defendant to proffer a legitimate reason for the adverse action. ... The burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the "legitimate" reason is merely pretext for prohibited, retaliatory conduct.

*Sierminski v. Transouth Financial Corporation*, No. 99-4371, 2000 WL 825672, at *5 (11th Cir. June 26, 2000) (citations omitted).

---

[27] Deepen affidavit ¶ 12.

It is well-established that plaintiff must prove three points in order to establish a *prima facie* case of retaliation:  first, that she engaged in statutorily protected expression or activity; second, that she suffered an adverse employment action; and third, the existence of a causal linkage between the protected conduct and the adverse action.  *See Gupta v. Florida Board of Regents*, 212 F.3d 571, 587 (11th Cir. 2000); *Farley v. Nationwide Mutual Insurance Company*, 197 F.3d 1322, 1336 (11th Cir. 1999); *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993).[28]

## A.   Denial of Request for Transfer or Reassignment

Plaintiff cannot make out a *prima facie* case of retaliation with respect to her assertion that she was unlawfully denied a transfer or reassignment based on the exercise of FMLA rights. Defendant's decision to deny plaintiff's request for transfer or reassignment to some position not supervised by Jean Parker predated plaintiff's taking of leave in May, June, and October of 1997.  By process of elimination, therefore, plaintiff contends that the FMLA leave she took in 1993 and 1994 (during the first occasion she was supervised by Parker) is the reason she was denied

---

[28] While *Gupta* (Title VII), *Farley* (ADA), and *Goldsmith* (Title VII) arise in different employment discrimination contexts, the same elements apply to a *prima facie* case of retaliation in the context of a FMLA action.  *See* Mistretta v. Volusia County Department of Corrections, 61 F. Supp. 2d 1255, 1260 (M.D. Fla. 1999).

transfer or reassignment.[29]

In *Gupta*, the Eleventh Circuit reiterated that the question of whether an employment action is sufficiently "adverse" to warrant scrutiny under a statutory anti-retaliation provision must be analyzed under both an objective and subjective standard:

> An adverse employment action is an ultimate employment decision, such as discharge or failure to hire, or other conduct that "alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee." ... Conduct that falls short of an ultimate employment decision must meet "some threshold level of substantiality ... to be cognizable under the anti-retaliation clause." ... In evaluating what actions meet that required level of substantiality, we recognize that "Title VII[] is neither a 'general civility code' nor a statute making actionable the 'ordinary tribulations of the workplace.'" ... Whether an action is sufficient to constitute an adverse employment action for purposes of a retaliation claim must be determined on a case-by-case basis, ... using both a subjective and objective standard, *see Doe v. Dekalb County School Dist.*, 145 F.3d 1441, 1448-49 (11th Cir. 1998) (recognizing that the subjective requirement is virtually almost always satisfied and imposing an objective requirement, as well).[30]

---

[29] While the court has noted *supra* that it will not consider plaintiff's allegations of FMLA retaliation that accrued prior to October 5, 1995, this particular claim did not accrue until Thomas decided not to reassign or transfer plaintiff in 1997.   The temporal proximity (or lack thereof) between the protected activity and the allegedly adverse employment action, however, will be discussed *infra* in terms of causation.

[30] In *Doe v. DeKalb County School District*, 145 F.3d 1441 (11th Cir. 1998), the Eleventh Circuit clarified the analysis that must be undertaken to determine whether a contested employment decision is sufficiently adverse to warrant scrutiny under federal employment discrimination laws.   The narrow issue before the *Doe* court was whether the plaintiff's subjective belief that a transfer was disadvantageous was sufficient proof of "adversity."   The *Doe* court concluded it

*Gupta*, 212 F.3d at 587.   While the Eleventh Circuit has not addressed whether, and under what circumstances, a defendant's <u>denial</u> of a transfer or reassignment can constitute an adverse employment action for anti-retaliation purposes, persuasive case law suggests that such an employment action is not sufficiently adverse to warrant protection under the anti-retaliation statutes. *See Pennington v. City of Huntsville, Alabama*, 93 F. Supp. 2d 1201, 1215 (N.D. Ala. 2000) (noting that defendant's refusal to assign an employee to the office he desired did not constitute an adverse employment action).   *Cf. Smith v. Alabama Department of Public Safety*, 64 F. Supp. 2d 1215, 1221-22 (M.D. Ala. 1999) (finding that Title VII plaintiff could not establish adverse employment action

---

was not, and committed the adverse employment action analysis to an objective standard:

> Having determined that we are not bound to a subjective standard, we adopt an objective test:  An ADA plaintiff must demonstrate that a reasonable person in his position would view the employment action in question as adverse.  In our view, this test best reflects our employment discrimination doctrine and precedents.

> . . .

> As in the Eleventh Circuit, all of the cases that have found a transfer to be adverse appear to have based their conclusions on objective factors. ... In other words, our sister circuits have only held transfers to be adverse where the transfers were objectively equivalent, at least to some degree, to demotions.

*Doe*, 145 F.3d at 1448-49, 1450 (reiterating that weight of authority leads to conclusion that "purely lateral" transfers do not constitute adverse employment actions).

based on transfer, because he suffered no loss in pay, benefits, or classification, only great embarrassment); *Merriweather v. Alabama Department of Public Safety*, 17 F. Supp. 2d 1260, 1276 (M.D. Ala. 1998) (holding that defendant's refusal to permit plaintiff to work in outlying counties did not amount to an adverse employment action). Based on the above authorities, and viewing the facts in a light most favorable to plaintiff, this court concludes plaintiff has failed to prove that defendant's decision not to transfer or reassign her was sufficiently adverse to implicate the FMLA.

Even if the denial of transfer or reassignment was deemed an adverse employment action, plaintiff has failed to demonstrate the required causation to establish a *prima facie* case. Plaintiff engaged in protected activity in 1993 and 1994. Defendant, through Marvin Thomas,[31] opted not to transfer or reassign her in 1997. Some three years passed in the meantime. This case falls squarely under the Eleventh Circuit's decision in *Maniccia v. Brown*, 171 F.3d 1364 (11th Cir. 1999), which held that a more than two-year

---

[31] The court recognizes that Thomas equivocated in deposition regarding whether plaintiff notified him of the fact that she had difficulty with Parker in the past relating to her taking of FMLA leave. Taking all inferences in favor of plaintiff at this stage in the proceedings, the court assumes plaintiff put Thomas on notice that she had taken FMLA leave in 1993 and 1994. *But see* England v. Compass Bank, No. CV-98-N-1029-S, 1999 WL 1825225, at *9 (N.D. Ala. Sept. 13, 1999) ("A simple "I don't recall" does not meet the burden [plaintiff] must demonstrate to show a material issue of fact in regard to [the decision-maker's] knowledge.").

gap between engagement in protected activity and the suffering of an adverse employment action nullified any inference of causation:

> Far from demonstrating a pattern of retaliatory activity, these two employment actions were isolated events that had no temporal relationship to Appellant's protected activity.  The more than 15-month period that elapsed between plaintiff's grievance and the alleged adverse employment actions belies her assertion that the former caused the latter.

*Id.* at 1370 (collecting cases).  In sum, plaintiff's retaliation claim premised on defendant's denial of her request for transfer or reassignment alternatively is due to be dismissed based on plaintiff's failure to prove the existence of a causal linkage between the protected conduct and the alleged adverse action.

Because plaintiff has failed to establish two of the three requisite elements for a *prima facie* case of retaliation in this context, the court does not explore defendant's legitimate, non-discriminatory reasons for refusing to transfer or reassign her.

**B.    Termination**

Plaintiff's claim that she was terminated in retaliation for her exercise of FMLA rights also is without merit.  Clearly, plaintiff can establish the first two elements of her *prima facie* case.  She engaged in statutorily-protected activity by taking leave in May, June, and October of 1997.[32]  She suffered an adverse

---

[32] To the extent plaintiff contends her taking of FMLA leave in 1993 and

26

employment action by being discharged in October of 1997.   Again,
however, plaintiff has difficulty linking the termination to the
taking of leave.   Even if plaintiff could establish the proper
causal linkage, she has not proffered sufficient evidence of
pretext to rebut defendant's legitimate, non-discriminatory reasons
for terminating her employment.

Plaintiff attempts to establish causation in this context by
noting that her "employment records clearly reflected her FMLA
usage, and Marvin Thomas, one of the decision-makers in plaintiff's
selection for layoff, was aware of [her] FMLA leave usage."[33]   As
stated *supra*, it is not clear from the record whether Thomas was
aware that plaintiff's leave in 1993 and 1994 was taken under the
FMLA.[34]   It is even less clear as to whether he knew she had taken
FMLA leave in May, June, and October of 1997:   *i.e.*, Jean Parker,
plaintiff's supervisor, and Tom Peters, a member of the Huntsville
Human Resources department — not Thomas — authorized plaintiff's

---

1994 resulted in her 1997 termination, that activity is statutorily-protected as
well.   *See supra* note 29.   As discussed *supra* with respect to her denial of
transfer or reassignment claim, however, the temporal gap between FMLA leave
taken in 1993 and 1994 and plaintiff's termination in 1997 is far too tenuous to
establish the necessary causal link.   *See Maniccia v. Brown*, 171 F.3d 1364, 1370
(11th Cir. 1999).   Accordingly, this court focuses on the FMLA leave taken by
plaintiff in May, June, and October of 1997 to determine whether it can somehow
be linked to her October 1997 termination.

[33] Plaintiff's brief in opposition to defendant's motion for summary
judgment, at 11.

[34] *See supra* note 31.

FMLA leave during 1997.  Moreover, defendant claims the decision to reduce the Huntsville Human Resources department by fifty percent was made in March of 1997, <u>prior to</u> plaintiff's taking of leave. As part of that downsizing, the decision was made to close the employment center in which plaintiff worked, thereby triggering plaintiff's own loss of employment, along with the other employees of that center.  This fact, if taken as true, leads to the inescapable conclusion that plaintiff has failed to establish the requisite causal link for a *prima facie* case of retaliation, because defendant's decision to adversely affect her employment predated her exercise of rights under the FMLA.  *See Griffin v. GTE Florida, Inc.*, 182 F.3d 1279, 1284 (11th Cir. 1999) ("At a minimum, Griffin must show that the adverse act followed the protected conduct; this minimum proof stems from the important requirement that 'the employer was actually aware of the protected expression at the time it took adverse employment action.'") (quoting *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993)).

Plaintiff argues, however, that defendant did <u>not</u> make the specific decision to discharge <u>her</u> until October of 1997, after her most recent exercise of FMLA rights.[35]  Because that is a genuine

---

[35] *See* Plaintiff's brief in opposition to defendant's motion for summary judgment, at 11.

issue of material fact, and this court must view the facts in the light most favorable to plaintiff, the court deems the causation element established, and proceeds to an analysis of defendant's legitimate, non-discriminatory reasons for termination and plaintiff's evidence of pretext. *See Goldsmith*, 996 F.2d at 1163 (noting that "a plaintiff need only establish that 'the protected activity and the adverse action were not wholly unrelated'" in order to establish the proper causal link) (citations omitted).

Defendant has met its intermediate of burden of production by noting that plaintiff was laid-off "due to a reorganization and downsizing of the human resources and other departments."[36] Plaintiff, conversely, has failed to "come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment action." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997), *cert. denied sub nom., Combs v. Meadowcraft Company*, 522 U.S. 1045, 118 S.Ct. 685, 139 L.Ed.2d 632 (1998). Upon review of the record, this court finds that a reasonable jury would not conclude that plaintiff's

---

[36] Reply to plaintiff's opposition to motion for summary judgment, at 7.

exercise of rights under the FMLA in May, June, and October of 1997 was a motivating factor behind defendant's decision to terminate her employment.  Plaintiff's bald assertion that Thomas, one of the decision-makers involved in the reduction-in-force, was aware of plaintiff's FMLA usage at the time her employment was terminated, while sufficient to establish the causation element of her *prima facie* case, does not satisfy the pretext inquiry.  *See Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 255, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981) (noting that once defendant meets burden of production, "the factual inquiry proceeds to a new level of specificity").  *Cf. NAACP-Montgomery Metro Branch v. City of Montgomery*, 188 F.R.D. 408, 414-415 (M.D. Ala. 1999) (noting that decision-maker's mere awareness of plaintiff's engagement in protected activity did "not suffice to overcome summary judgment" as to retaliation claim, because that evidence was not indicative of pretext).  In brief, plaintiff spent a considerable number of pages linking defendant's discharge decision to allegedly improper considerations of <u>disability</u>.  The disability-based discharge claim, however, is not properly before this court.[37]  Accordingly, those arguments are not probative on the issue of whether

---

[37] *See supra* § II.C.2.

plaintiff's legitimate, non-discriminatory reasons are in fact a mask for unlawful retaliation under the FMLA.

Moreover, the pretext arguments relating to plaintiff's FMLA retaliation claim are not convincing.  Plaintiff points to defendant's "Redeployment & Surplus Guidelines for Salaried Employees" as evidence that it deviated from policy in terminating her.[38]  That document provides, however, that priority consideration should be given to "employees involved in the redeployment process for filling of openings."  That statement has no application in a reduction-in-force context, where positions are eliminated, rather than filled.  Defendant's affirmative action policy indicates that seniority provisions in a union contract are not to be superseded by affirmative action considerations with respect to promotions, transfers, and lay-offs.[39]  That point, which focuses on union-management issues, has no correlation to this particular reduction-in-force or plaintiff's FMLA usage.  Moreover, it does not mandate that seniority be taken into account during a reduction-in-force.  Finally, Thomas' statement in deposition that he did not take plaintiff's seniority into account when designating her for lay-off

---

[38] *See* Exhibit 20 of plaintiff's evidentiary submission in opposition to summary judgment.

[39] *See* Exhibit 8 of plaintiff's evidentiary submission in opposition to summary judgment, at question 11.

is not sufficient to establish pretext. As stated *supra*, plaintiff has not established that seniority necessarily had to be taken into account as part of this reduction-in-force, particularly in light of the fact that defendant planned to eliminate the <u>entire</u> employment center workforce, of which plaintiff was only one. Plaintiff's retaliatory discharge claim bottomed on the FMLA, therefore, also is due to be dismissed.

## V. CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is due to be granted. An order consistent with this memorandum opinion shall be entered contemporaneously herewith.

DONE this 8th day of August, 2000.

_____

United States District Judge

32